UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-20754-Civ-ALTONAGA
      (06-20758-Cr-ALTONAGA)
MAGISTRATE JUDGE P. A. WHITE

ROY M. BELFAST, JR., a.k.a.
Chuckie Taylor, a.k.a.          :
Charles McArthur Emmanuel,
a.k.a. Charles Taylor, Jr.      :
a.k.a. Charles Taylor, II,
                                :
      Movant,
                                :
v.                                          REPORT OF
                                :        MAGISTRATE JUDGE
UNITED STATES OF AMERICA,
                                :
      Respondent.
_____ :

I. Introduction

     This matter is before this Court on the movant's motion to
vacate pursuant to 28 U.S.C. §2255, attacking his convictions
following a jury verdict in Case No. 06-20758-Cr-Altonaga.

     The Court has reviewed the motion with supporting memorandum
of law and attached exhibits (Cv-DE# 1); movant's supplemental
pleading (Cv-DE# 6); the government's response with numerous
supporting exhibits (Cv-DE# 10), which includes a copy of the trial
transcript; the movant's reply (Cv-DE# 32);[1] and all pertinent
portions of the underlying criminal file.

II. Claims

     In his original motion to vacate, Movant challenges his
convictions on three enumerated grounds, which consists of claims
of ineffective assistance of trial and appellate counsel.

_____

     [1]The undersigned commends Assistant United States Attorney Karen E. Rochlin
on her thoughtful and thorough response filed in the instant proceeding which was
most helpful to the undersigned when disposing of the motion to vacate as
supplemented.

Specifically, he alleges that:

> (1) appellate counsel improperly failed to raise as an issue on direct appeal that this Court's jury instruction, defining "color of law," resulted in an unlawful variance of the superseding Indictment;

> (2) appellate counsel improperly failed to raise as an issue on direct appeal that this Court's jury instructions created a variance from, or constructive amendment to, the allegations of Count 1 of the superseding indictment, charging a conspiracy to torture; and

> (3) trial counsel improperly failed to object when Wesley Sieh's hearsay testimony was admitted pursuant to Fed.R.Evid. 801(d)(2)(C) and (D).

In his supplemental pleading, Movant again claims that he received ineffective assistance of trial and appellate counsel, alleging that:

> (1) appellate counsel failed to properly challenge on direct appeal the admission of certain hearsay testimony set forth as a list of bullet points;

> (2) appellate counsel failed to challenge on direct appeal his Section 924(c) conviction in that the offense required proof of the firearm's nexus to interstate or foreign commerce;

> (3) trial counsel failed to properly object to the admission of Wesley Sieh's testimony; and

> (4) trial counsel failed to object to the "color of law" portion of the jury instruction and appellate counsel failed to raise the issue on direct appeal.

### III. Background Regarding Criminal Charges[2]

In October 1994, the United States became a party to the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85, ("CAT"). The CAT called for its parties, among other matters, to ensure that acts of torture are criminal

---

[2]A more extensive review of the international and national prohibitions of torture has been set forth in this Court's order, denying Movant's motion to dismiss the Indictment. See Order on Defendant's Motion to Dismiss the Indictment at 1-6. (Cr-DE# 148).

offenses, and to establish jurisdiction over acts of torture when the alleged offender is a national of the party in question.[3] Arts. 4 and 5(2). The CAT requires each signatory nation to take all appropriate and necessary measures to prevent acts of torture in any territory under its jurisdiction. CAT, Article 2(1), 4(1), 5(1)-(2). In accordance with the Treaty, which was not "self-executing, Congress enacted Title 18 U.S.C. §§2340-2340A, the "Torture Act."[4] See Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1240 n.1 (11th Cir. 2004). The Torture Act provides that "[w]hoever outside the United States commits or attempts to commit torture shall be fined ... or imprisoned not more than 20 years, or both, and if death results ... shall be punished by death or imprisoned for any term of years or for life." 18 U.S.C. §2340A(a). The federal courts have jurisdiction if "the alleged offender is a national of the United States[,] or [if] the alleged offender is present in the United States, irrespective of the nationality of the victim or alleged offender." Id. §2340A(b). A person who conspires to commit an offense under the Torture Act is subject to the same penalties prescribed for the offense itself. Id. §2340A(c).

---

[3]"Torture" is defined as:

[A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

CAT, art. 1(1).

[4]"Torture" is defined under the Torture Act as:

an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control.

18 U.S.C. §2340(1).

IV.   <u>Factual Background and Procedural History</u>

A. <u>Facts of the Offense</u>

The movant in this case is Roy M. Belfast, Jr., a/k/a Charles McArthur Emmanuel, a/k/a Charles Taylor, Jr., a/k/a Chuckie Taylor, II. He is the son of the former President of Liberia, Charles Taylor. In brief, Movant was prosecuted and convicted of committing numerous acts of torture and other atrocities in Liberia between 1999 and 2003, during the presidency of his father. As aptly and described by the Eleventh Circuit in its opinion on direct appeal, "[t]he facts of this case are riddled with extraordinary cruelty and evil." <u>United States v. Belfast</u>, 611 F.3d 783, 793 (11th Cir. 2010). The pertinent facts of this case are as follow:

> The defendant, Charles McArthur Emmanuel, was born in Massachusetts in 1977, the son of Bernice Yolanda Emmanuel and Charles Taylor. Taylor returned to his native Liberia sometime thereafter. Emmanuel's mother married Roy Belfast in 1983. Apparently out of fear that Taylor would try to take her son, Bernice Emmanuel moved with him and Belfast to Orlando, FL. There, the couple also changed Emmanuel's name to Roy Belfast, Jr.

> In 1992, Emmanuel visited Liberia, where a bloody civil war had been raging for three years. At the time of Emmanuel's visit, his father, Taylor, led the National Patriotic Front of Liberia ("NPFL"), an armed insurgent group. The NPFL was one faction in the struggle for national power following the assassination of Liberian President Samuel Doe in 1990. After some months, Emmanuel returned to the United States. Two years later, however, Emmanuel again visited Liberia; this time, he did not return. In 1997, Taylor was elected to the presidency. President Taylor soon charged the twenty-year-old Emmanuel with overseeing the state's creation of an Anti-Terrorism Unit ("ATU")—also known in Liberia as the "Demon Forces"—which was responsible for protecting Taylor and his family.

> Under Emmanuel's direction, the ATU began recruiting men to fill its ranks, and installed them at a former training camp known as Gbatala Base. The base was situated in a swampy area. As described by one recruit, Wesley Sieh, Emmanuel directed the ATU soldiers to dig around twenty grave-size prison pits, which were eventually covered with metal bars or barbed wire. A periodically overflowing river in the vicinity caused some of the pits to fill with water, which then stagnated. Aside

from the prison pits, the base included a shooting range, a building containing a holding cell for disobedient ATU soldiers, and an "educational" training facility known as the College of Knowledge. The base was under the command of David Compari; he took orders from Emmanuel, who appeared several times a week wearing the ATU's green tiger-striped uniform and red emblem bearing a cobra and scorpion.

The ATU was Emmanuel's self-described "pet project." At Gbatala and elsewhere, ATU affiliates referred to Emmanuel as "Chief," and his license plate read "Demon." Between 1999 and 2002, the defendant wielded his power in a terrifying and violent manner, torturing numerous individuals in his custody who were never charged with any crime or given any legal process.[5]

*      *      *

In 2003, Liberia's civil war ended. President Taylor resigned, left the country, and was ultimately extradited to the Hague, where he is currently on trial for crimes against humanity in the Special Court for Sierra Leone.[6] Emmanuel left Liberia in July 2003. Between 2004 and 2005, he called the United States Defense Attaché in Liberia from Trinidad several times, seeking information about the United Nations travel ban on certain persons, inquiring about joining the United States Marines, and claiming that he was an American who could go home whenever he wanted.

On March 30, 2006, when Emmanuel arrived at Miami International Airport on a flight from Trinidad, officials executed a warrant for his arrest for attempting to enter the United States using a false passport. Emmanuel's luggage

---

[5]The Eleventh Circuit then went on to give a full account of the acts of torture, as had been described at length and in disturbing detail at Movant's trial by his victims and others. Belfast, 611 F.3d 783, 794-99 (11th Cir. 2010). For example, Movant and his co-conspirators, under color of law and with the specific intent to inflict severe physical pain and suffering, burned the victim's flesh with a hot iron, forced victims at gunpoint to hold scalding water, burned other parts of the victim's body with scalding water, repeatedly shocked the victim's genitalia and other body parts with an electrical device, rubbed salt in the victim's wounds, and murdered other victims. Id.

[6]It is noted that since the Eleventh Circuit's opinion, the Trial Chamber judges on April 26, 2012, convicted Taylor of aiding and abetting the commission of serious crimes including rape, murder, and destruction of civilian property by Revolutionary United Front (RUF) and Armed Forces Revolutionary Council (AFRC) forces in Sierra Leone from November 30, 1996, to January 18, 2002. The judges further found that Taylor helped to plan attacks on three towns, including the diamond rich town of Kono and the country's capital Freetown, in late 1998, to early 1999. On May 30, 2012, the judges sentenced Taylor to a jail term of 50 years for his role in the Sierra Leonean conflict.

contained a book on guerilla tactics and a notebook with rap lyrics, some making reference to the ATU. During his arrest, Emmanuel knowingly waived his rights and made the following statements: first, that his father was Charles Taylor, even though he had listed "Daniel Smith" as his father on a recent U.S. passport application; second, that the ATU was his "pet project" prior to 2000 and that he was considered its commander; and third, that he was present when a "press guy" was arrested by "the general"—Yeaten—and was beaten and burned with an iron.[7]

Belfast, 611 F.3d at 793-94, 799 (summarizing evidence admitted at trial).

B.   Indictment, Pretrial Proceedings, Conviction, Sentencing and Direct Appeal

Movant was first charged in an Indictment returned by the grand jury on December 6, 2006, with committing the offenses of conspiracy to commit, and the commission of acts of torture upon an unidentified person ("victim") in the country of Liberia. (Cr-DE# 2). Movant was arrested on the charges on December 7, 2006. (Cr-DE# 4). He was ultimately charged in an eight-count second Superseding Indictment returned by the grand jury on November 7, 2007. (Cr-DE# 257). Specifically, Movant was charged with the offenses of conspiracy to commit torture in Liberia against seven unnamed victims—with death resulting to at least one victim—by seizing, imprisoning, interrogating, and mistreating them, and by committing various acts with the specific intent to inflict severe physical pain and suffering, all in violation of 18 U.S.C. §2340A(c) (Count One);[8] conspiracy to use and carry a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §924(o) (Count Two); committing substantive crimes of torture against five named victims, in violation of 18 U.S.C. §2340A(a) (Counts Three through

---

[7]Movant was charged and, pursuant to his plea of guilty, convicted in this Court on the passport fraud charges. See United States v. Emmanuel, Case No. 06-20263-Cr-Graham.

[8]It is noted that Movant was the first individual to be prosecuted under the Torture Act, 18 U.S.C. §2340-2340A ("the Torture Act").

Seven); and using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §924(c)(1)(A) (Count Eight). <u>Id</u>.

Movant entered pleas of not guilty to the crimes charged and the case proceeded to trial before a jury. Movant was represented at trial by appointed counsel, Assistant Federal Public Defenders Miguel Caridad and John Wylie and extensive pre-trial proceedings were conducted. For example, trial counsel challenged on various constitutional grounds the charges brought against Movant. <u>See</u> Defendant's Motion to Dismiss the Indictment, and Memorandum of Law in Support Thereof, Based on the Unconstitutionality of 18 U.S.C. §2340A, Both on Its Face and as Applied to the Allegations of the Indictment. (Cr-DE# 38). In pertinent part, Movant alleged that the offense of torture was unconstitutionally vague for failing to define various terms, including the element of action under color of law.[9] <u>Id</u>. at 17. The government filed a well-reasoned, comprehensive response. <u>See</u> Response in Opposition to Defendant's Motion to Dismiss the Indictment. (Cr-DE# 58). The movant filed a reply, arguing in relevant part that the subject criminal statute was unconstitutional in that its definition of torture was materially different and much broader than the definition set forth in the Treaty. <u>See</u> Defendant's Reply to Government's Response to

---

[9]Specifically, Movant claimed that (1) Congress lacked constitutional authority to enact Section 2340A, and lacked the power to regulate foreign commerce; (2) Congress lacked the authority to apply criminal laws extraterritorially, where the locus of the offense was completely foreign; (3) the prosecution violated the doctrine of sovereign immunity, in that the Indictment sought to charge Movant, as a foreign official, for acts committed while he was allegedly acting in an official capacity; (4) Section 2340A was unconstitutionally vague on its face and as applied, in violation of the Due Process Clause of the Fifth Amendment; (5) extraterritorial application of the statute violated the Fifth Amendment guarantee of due process; and (6) extraterritorial application of the statute violated the Sixth Amendment right to a speedy trial before a jury of one's peers in the place where the crime was committed, the right to compulsory process, and the right to the effective assistance of counsel. <u>See</u> Defendant's Motion to Dismiss the Indictment, and Memorandum of Law in Support Thereof, Based on the Unconstitutionality of 18 U.S.C. §2340A, Both on Its Face and as Applied to the Allegations of the Indictment. (Cr-DE# 38).

Motion to Dismiss Indictment Based on Facial and As-Applied Unconstitutionality. (Cr-DE# 83). For example, Movant asserted that 18 U.S.C. §2340's requirement of action under "color of law" was improper when the CAT, instead, referred to a "public official" or "someone acting in an official capacity." Id. Movant expressly objected to the government's position that action under color of law included persons who were not officials themselves. Id. Movant's motion to dismiss was denied. See Order on Defendant's Motion to Dismiss the Indictment. (Cr-DE# 148). The Court agreed with the government that the statute criminalizing torture did not have to track the language of the CAT verbatim, and the statutory definition of torture did parallel the definition found in the Convention, in that both texts defined torture to include the intentional infliction of severe pain or suffering by a public official or person acting under color of law. Id. at 9-17. When rejecting as meritless Movant's sovereign immunity argument, the Court observed that the movant was not charged with action taken in an official capacity but with action taken under color of law, and then concluded that even non-governmental employees may be charged with acting under color of law. Id. at 22-23.

At the jury trial, the government called numerous witnesses who testified as to their observations of Movant's activities at the ATU's training base in Gbatala, Liberia, which was also used to imprison civilians. See Belfast, 611 F.3d at 794-99. Movant was found guilty as to all crimes charged in the second Superseding Indictment, he was adjudicated guilty of the crimes, and he was sentenced to a total term of imprisonment of 97 years. (Cr-DE# 581, 618).

Movant prosecuted a direct appeal from his convictions and sentences during which he was again represented by the Federal Public Defender. (Cv-DE# 10-25). The following issues were raised

on appeal: (1) the Torture Act was unconstitutional in that the Act impermissibly exceeded the bounds of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, both in its definition of torture and its proscription against conspiracies to commit torture as well as other enumerated reasons; (2) the convictions under 18 U.S.C. §924(c) were unlawful, because the provision could not apply extraterritorially to actions in Liberia; (3) an accumulation of procedural errors rendered the trial fundamentally unfair; and (4) the sentence imposed was unlawful for several asserted reasons. See Belfast, 611 F.3d 783. In an 86-page published opinion, the Eleventh Circuit affirmed the convictions and sentence, rejecting as meritless all of Belfast's challenges. Id. Movant's petition for writ of certiorari was denied by the Supreme Court on February 22, 2011. Belfast v. United States, ___ U.S. ___, 131 S.Ct. 1511, 179 L.Ed.2d 334 (2011).

## C. §2255 Proceedings

Just days shy of one year after the Supreme Court denied review, Movant returned to this Court, filing the initial pro se motion to vacate pursuant to 28 U.S.C. §2255. (Cv-DE# 1). Approximately two months later, in a pleading executed on April 13, 2012, Movant sought leave to file a supplement to his initial §2255 motion so that he could add claims not included in his initial motion. (Cv-DE# 6). Movant was permitted to file his supplemental pleading, subject to all applicable procedural bars. (Cv-DE# 7). The government has filed a response, arguing that Movant is not entitled to relief in that certain claims are not cognizable in this collateral proceeding, other claims are factually and legally without merit, and some of the claims presented in the supplemental pleading are time-barred.

Before proceeding to a discussion of the claims presented, the

threshold procedural issue of timeliness must first be resolved. Generally, §2255 motions must be filed within one-year of "the date on which the judgment of conviction becomes final."[10] 28 U.S.C. §2255(f)(1). The convictions and sentence in this case became final on February 22, 2011, the date that Movant's petition for certiorari was denied by the Supreme Court.[11] Clay v. United States, 537 U.S. 522, 527, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003)(holding that finality occurs when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). See also Jimenez v. Quarterman, 555 U.S. 113, 119, 129 S.Ct. 681, 685, 172 L.Ed.2d 475 (2009)("With respect to postconviction relief for federal prisoners, this Court has held that the conclusion of direct review occurs when 'this Court affirms a conviction on the merits on direct review or denies a

---

[10]Section 2255(f) sets a one-year limitations period running from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant is prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

[11]A conviction is final when a judgment of conviction has been rendered, the availability of appeal has been exhausted, and the time for a petition for certiorari has elapsed or a petition for certiorari has been finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1987); accord, United States v. Kaufmann, 282 F.3d 1336 (11th Cir. 2002). Once a judgment has been entered by a United States Court of Appeals, a petition for writ of certiorari must be filed within ninety days of the date of entry of the judgment. The ninety-day time period runs from the date of entry of judgment rather than the issuance of a mandate. Sup.Ct.R. 13. See also Close v. United States, 336 F.3d 1283 (11th Cir. 2003).

petition for a writ of certiorari.'").

Movant had until February 22, 2012, to file a timely motion to vacate. In this case, Movant filed his motion less than a year after his convictions and sentence became final. The initial motion to vacate filed on February 16, 2012,[12] was therefore timely, as conceded by the government. The government argues, however, that the claims as set forth above as grounds one and two in the subsequent amendment have not been timely filed, rendering those claims time-barred.

Under 28 U.S.C. §2242, a habeas petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." Federal Rule of Civil Procedure 15 governs amended pleadings and provides that once a responsive pleading has been served, leave of court is required. When considering whether amendment is appropriate, the court must be mindful that the new grounds for relief are not be supported by facts that differ in both time and type from those the original petition raised, because if so then the claims would not relate back to the original petition for purposes of the one-year statute of limitations. See Mayle v. Felix, 545 U.S. 644, 650, 125 S.Ct. 2562, 2566 (2005)(holding that "[a]n amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in time and type from those the original pleading set forth."). See also Davenport v. United States, 217 F.3d 1341, 1344-46 (11th Cir.

---

[12]The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's pleadings. Adams v. United States, 173 F.3d 1339 (11th Cir. 1999)(prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing). For purposes of this motion to vacate proceeding, Movant's motion to vacate is deemed filed when he handed over his initial pleading to prison authorities for mailing on February 16, 2012. (Cv-DE# 1).

2000)[13]

The *Mayle* decision makes clear, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." 545 U.S. at 659, 125 S.Ct. at 2572. Relation back turns on the facts underlying a claim, not the legal theory. Mayle, 545 U.S. at 646. Thus, in order for the newly added claims here to be reviewed on the merits they must arise from the same circumstances as raised in the initial motion to vacate. The untimely claims must have more in common with the timely filed claims than the mere fact that they arose out of the same trial and sentencing proceedings. Dean v. United States, 278 F.3d 1218 (11th Cir. 2002), citing, Davenport, supra at 1344. See also Robles v. Duncan, 2001 WL 1603933, *4-6 (N.D.Cal. 2001)(holding in §2254 proceeding that amended petition was untimely, therefore, the equal protection claim contained therein was time-barred), citing, Davenport, 217 F.3d at 1344-46.

In the instant case, under *Mayle* and *Davenport*, the government correctly argues that claims one and two of the supplemental pleading do not relate back to the claims initially raised. See United States v. Gonzalez, 592 F.3d 675, 680 (5th Cir. 2009)(holding that new claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision). These claims of the amended motion do not arise from

---

[13]The Supreme Court's approach to interpreting amendments to pleadings in the habeas corpus context set forth in *Mayle* was already the law in the Eleventh Circuit. See Davenport v. United States, 217 F.3d 1341, 1344-46 (11th Cir. 2000)(holding that a claim which was not part of the original timely motion to vacate does not relate back to the original claims and is time-barred if it does not arise out of the same conduct, transaction or occurrence), citing, United States v. Craycraft, 167 F.3d 451, 456-7 (8th Cir. 1999)(holding that out-of-time claim of ineffective assistance of counsel for not filing an appeal did not relate back to timely claims of ineffective assistance of counsel raised in the initial timely-filed §2255 motion), cert. denied, 532 U.S. 907 (2001).

the same operative facts as the claims raised in the initial motion to vacate. Claims three and four raised in the supplemental pleading, however, are tied to a common core of operative fact raised in grounds one and four of the initial motion to vacate, respectively. Movant is, therefore, entitled to review on the merits of the claims presented in grounds three and four of the supplemental pleading.[14]

V. <u>Discussion</u>

A. <u>Standard of Review</u>

Pursuant to 28 U.S.C. §2255, a prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. §2255. It is well-established that a §2255 motion may not be a surrogate for a direct appeal. <u>See, e.g.</u>, <u>United States v. Frady</u>, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982). Based upon this principle that §2255 review is not a substitute for a direct appeal, the following general rules have developed: (1) a defendant must assert all available claims on direct appeal, <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994); and (2) "[r]elief under 28 U.S.C. §2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" <u>Richards v. United States</u>, 837 F.2d 965, 966 (11th Cir. 1988)(*quoting* <u>United</u>

---

[14]Even if not time-barred, Movant would not be entitled to postconviction relief on the claims raised as grounds one and two in the supplemental pleading. These claims are  meritless for the reasons asserted by the government in its response. <u>See</u> Government's Response in Opposition to Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, and Correct Sentence at 32-6. (Cv-DE# 10).

States v. Capua, 656 F.2d 1033, 1037 (5th Cir. Unit A Sep. 1981)).[15] Thus, a non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice. Lynn v. United States, 365 F.3d 1225, 1232-33 (11th Cir. 2004), citing, Frady, 456 U.S. at 165, 102 S.Ct. at 1593, Stone v. Powell, 428 U.S. 465, 477 n. 10, 96 S.Ct. 3037, 3044 n. 10, 49 L.Ed.2d 1067 (1976), cert. denied, 543 U.S. 891, 125 S. Ct. 167, 160 L. Ed. 2d 154 (2004).

Accordingly, the threshold inquiry in a Section 2255 proceeding is whether a movant's claim is cognizable under Section 2255. Id. The inquiries which follow are whether the issue could have been raised on direct appeal and, if so, whether the failure to do so renders the claim procedurally barred in the collateral proceeding. Massaro v. United States, 538 U.S. 500 (2003). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal and actual prejudice resulting from the alleged error or (2) actual innocence. Lynn, 365 F.3d at 1234. See also Bousley v. United States, 523 U.S. 614, 622-23 (1998); Jones v. United States, 153 F.3d 1305 (11th Cir. 1998)(finding that cause and prejudice was not available to movant as a means of avoiding procedural default, but recognizing that actual innocence might still be a viable option); Campino v. United States, 968 F.2d 187, 189-90 (2d Cir. 1992)("[A] procedural default of even a constitutional issue will bar review under Section 2255, unless the

---

[15]The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981, and all Fifth Circuit Unit B decisions rendered after October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

petitioner can meet the 'cause and prejudice' test"). To show cause, a defendant must prove that "some objective factor external to the defense impeded counsel's efforts" to raise the claim previously. Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). Ineffective-assistance-of-counsel claims are excepted from this general procedural default rule. Massaro, supra.

Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). See also Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)(explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous"). As indicated by the discussion below, the motion and the files and records of the case conclusively show that Movant is entitled to no relief, therefore, no evidentiary hearing is warranted. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979).

B. Principles Regarding Ineffective Assistance of Counsel

Movant raises various claims of ineffective assistance of counsel. This Court's analysis begins with the familiar rule that the Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defence." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that her or his counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To establish deficient performance, the petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. Strickland, supra. The Court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001)(quoting Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987)). There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel have in making tactical decisions. Id. at 1317. The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Chandler, 218 F.3d at 1313. Instead the test is whether what counsel did was within the wide range of reasonable professional assistance. Id. at 1313 n.12.

Thus, in assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Strickland, 466 U.S. at 689-90. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Id. at 690-91. To

16

uphold a lawyer's strategy, the Court need not attempt to divine the lawyer's mental processes underlying the strategy. "There are countless ways to provide effective assistance in any given case." <u>Strickland</u>, 466 U.S. at 689. No lawyer can be expected to have considered all of the ways. <u>Chandler</u>, 218 F.3d at 1316. Regarding the prejudice component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. <u>Id</u>. at 697. <u>See also</u> <u>Butcher v. United States</u>, 368 F.3d 1290, 1293 (11th Cir. 2004).

As to claims regarding trial counsel's performance that affect a movant's rights on direct appeal, the Eleventh Circuit has drawn a distinction between: (1) a claim that, while efficacious in raising an issue, i.e., objecting to the alleged error, counsel nonetheless was ineffective for failing to preserve the issue for appeal; and (2) a claim that trial counsel was ineffective for failing to object to an alleged error at trial. <u>See</u> <u>Davis v. Sec'y for Dept. of Corr.</u>, 341 F.3d 1310, 1316 (11th Cir. 2003). In making this distinction, the Eleventh Circuit has stated that, in the former case, with respect to *Strickland's* prejudice prong, courts ask "whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved." <u>Id</u>. In contrast, in the latter case, with respect to *Strickland's* prejudice prong, courts ask whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Purvis v. Crosby</u>, 451 F.3d 734, 741 (11th Cir. 2006).

The two-prong *Strickland* test is equally applicable in

assessing counsel's performance in appellate proceedings. See Grubbs v. Singletary, 120 F.3d 1174, 1176 (11th Cir. 1997)(applying the *Strickland* test to a claim of ineffective assistance of appellate counsel). See also Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987). In Jones v. Barnes, 463 U.S. 745 (1983), the Supreme Court held that the Sixth Amendment does not require appellate attorneys to press every non-frivolous issue that the client requests to be raised on appeal, provided that counsel uses professional judgment in deciding not to raise those issues. In considering the reasonableness of an attorney's decision not to raise a particular claim, this Court must consider "all the circumstances, applying a heavy measure of deference to counsel's judgments." Eagle v. Linahan, 279 F.3d 926, 940 (11th Cir. 2001), quoting, Strickland, 466 U.S. at 691. Further, in determining whether the failure to raise a claim on appeal resulted in prejudice, the courts must review the merits of the omitted claim and, if it is concluded that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal. Eagle, 279 F.3d at 943.

Keeping these principles in mind, the Court must now determine whether counsel's performance was both deficient and prejudicial under *Strickland*. As indicated, Courts must be highly deferential in reviewing counsel's performance, and must apply the strong presumption that counsel's performance was reasonable. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689. See also Chandler v. United States, 218 F.3d at 1314. "Surmounting *Strickland's* high bar is never an easy task."[16] Padilla v. Kentucky,

---

[16]As recently noted by the Supreme Court:

559 U.S. ____, ____, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284, 297 (2010). <u>See also</u> <u>Osborne v. Terry</u>, 466 F.3d 1298, 1305 (11th Cir. 2006)(*citing* <u>Chandler v. United States</u>, 218 F.3d at 1313).

C. <u>Analysis</u>

1.   <u>Ground One of Initial Motion to Vacate</u>
<u>and</u>
<u>Ground Four of Supplemental Pleading</u>

Discerning Movant's true claims is no easy task since the claims have not been presented in a clear and concise manner but, instead, have been stated in a rambling narrative form. When construing Movant's pleadings liberally, as this Court must with <u>pro se</u> litigants,[17] it appears that Movant is essentially claiming in **ground one** of his initial motion and ground **four** of the supplemental pleading that he received ineffective assistance of appellate counsel, because his lawyer failed to raise as an issue on direct appeal that this Court's jury instruction, defining "color of law," resulted in an unlawful variance of the Indictment. He also appears to maintain that the facts proved at trial to

---

An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. <u>Strickland</u>, 466 U.S. at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." <u>Id.</u>, at 689, 104 S.Ct. 2052; see also <u>Bell v. Cone</u>, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed .2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

<u>Harrington v. Richter</u>, ___ U.S. ___, 131 S.Ct. 770, 788 (2011). <u>See also</u> <u>Premo v. Moore</u>, ___ U.S. ___, 131 S.Ct. 733, 739-740, 2011 WL 148253, *5 (2011).

[17]Normally, <u>pro se</u> filings are subject to less stringent pleading requirements, <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976), and should be liberally construed with a measure of tolerance. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), <u>See also</u> <u>Gomez-Diaz v. United States</u>, 433 F.3d 788, 791 (11th Cir. 2005).

support the torture convictions materially varied from the allegations of the superseding indictment, and the issue should have been raised on direct appeal.

Review of the record reveals that Movant was charged in Counts Three through Seven of the second Superseding Indictment with committing substantive crimes of torture against five named victims, in violation of 18 U.S.C. §2340A(a). As indicated herein, "torture" is defined under the Torture Act as:

> an act committed by a person *acting under the color of law* specifically intended to inflict severe physical or mental pain or suffering[18] (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control.

(emphasis added). 18 U.S.C. §2340(1). At the close of the trial, the Court instructed the jury as to the definition of "action under color of law." (DE# 636 at 160). Specifically, the jury was instructed pursuant to the Eleventh Circuit Pattern Jury Instruction, Offense Instruction No. 8 (2003), which stated that to act "under color of law" means

> to act beyond the bounds of lawful authority, but in such a manner that the unlawful acts were done while an official was purporting or pretending to act in the performance of official duties. In other words, the unlawful acts must consist of an abuse or misuse of power which is possessed by the official only because that person is an official.

---

[18]"Severe mental pain or suffering," is defined as:

the prolonged mental harm caused by or resulting from—

(A) the intentional infliction or threatened infliction of severe physical pain or suffering;
(B) the administration or application, or threatened administration or application, of mind-altering substances or other procedures calculated to disrupt profoundly the senses or personality;
(C) the threat of imminent death; or
(D) the threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind-altering substances or other procedures calculated to disrupt profoundly the senses or personality....

18 U.S.C. §2340(2).

Id. Based upon Pattern Offense Instruction No. 8, the jury was more specifically instructed that:

> The defendant may be found guilty of the charges contained in the second Superseding Indictment, however, even though the defendant was not an official or employee of a governmental unit if you find beyond a reasonable doubt that the essential facts constituting the offense charged have been established, as defined in these instructions, and that the defendant was a willful participant together with the governmental unit or its agents in the doing of such acts.

(DE# 636 at 160).

It appears that Movant is raising the same or substantially the same argument that he presented in his pretrial motion to dismiss. He is apparently maintaining that persons who were not officials or employees of a government unit themselves cannot be deemed to have acted under color of law and that the allegation of the Indictment "had authority to command members of the ATU,"[19] did not constitute "acting under the color of law," an essential element of the statute. Movant does not raise independent substantive challenges to the jury instructions which define color of law and/or the prosecution itself, but has instead presented these challenges as underlying claims of ineffective assistance of trial and/or appellate counsel. Regardless of how presented, Movant is not entitled to relief.

First, as indicated above, the argument advanced in the motion to dismiss the indictment was unsuccessful. The Court expressly stated in its order, denying Movant's motion to dismiss that the Movant had not been charged with action taken in an official capacity but with action taken under color of law, and that even non-governmental employees could be charged with acting under color of law. See Order on Defendant's Motion to Dismiss the Indictment

_____

[19] See Second Superseding Indictment at 3. (Cr-DE# 257).

at 22-23. (Cr-DE# 148). As pointed out by the government, this Court's ruling that someone need not be a government official to act under color of law is well-established. <u>See, e.g.</u>, <u>United States v. Price</u>, 383 U.S. 787, 794 (1966)(private persons who act jointly with state officials in prohibited action are acting under color of law; "[t]o act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents"); <u>Williams v. United States</u>, 341 U.S. 97, 100 (1951)(private detective coercing confessions during investigation with police participation acted under color of law; <u>United States v. Haimowitz</u>, 725 F.2d 1561, 1582 (11th Cir. 1984); <u>United States v. Causey</u>, 185 F.3d 407, 415 (5th Cir. 1999); <u>United States v. Picklo</u>, 190 Fed. Appx. 887, 889 (11th Cir. 2006)(stating "'[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law.'", *quoting*, <u>Williams</u>, 341 U.S. at 99).

Next, no variance from the indictment existed to support an objection by trial counsel.[20] A variance occurs when the evidence at trial establishes facts materially different from those alleged in the indictment. <u>See</u> <u>United States v. Lander</u>, 668 F.3d 1289, 1295 (11th Cir. 2012). Or, an indictment is constructively amended "when

---

[20]The Fifth Amendment to the United States Constitution provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury ...." Based upon this Fifth Amendment protection, a defendant can be convicted only for a crime charged in the indictment. <u>See generally</u> <u>Stirone v. United States</u>, 361 U.S. 212 (1960); <u>Cole v. Arkansas</u>, 333 U.S. 196 (1948); <u>Markham v. United States</u>, 160 U.S. 319 (1895). <u>See also</u> <u>United States v. Dortch</u>, ___ F.3d ___, 2012 WL 4335185, *6 (11th Cir. 2012). An indictment is constructively amended "when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." <u>Id</u>., *quoting*, <u>United States v. Keller</u>, 916 F.2d 628, 634 (11th Cir. 1990).

the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." <u>States v. Dortch</u>, ___ F.3d ____, 2012 WL 4335185, *6 (11th Cir. 2012), *quoting*, <u>United States v. Keller</u>, 916 F.2d 628, 634 (11th Cir. 1990). When a material variance occurs, the defendant is not entitled to relief unless he suffered substantial prejudice as a result. <u>Lander</u>, <u>supra</u>. For a court to find substantial prejudice, the facts proved at trial differ so greatly from the charges that the defendant is unfairly surprised and unable to prepare an adequate defense. <u>Id</u>. Here, the jury instruction tracked the language of the indictment and Movant was well-aware before trial that he had not been charged with acting as an official but with acting under color of law. There was certainly no unfair surprise here. Since both the indictment and the color-of-law jury instruction conformed to established and binding precedent, Movant has failed to demonstrate a variance or legal error.

Further, it is noted that during the direct appeal, Movant argued *inter alia* that the CAT limited the scope of "torture" to conduct committed by "a public official or other person acting in an official capacity," whereas the Torture Act required that the torturous conduct be "committed by a person acting under the color of law." <u>Belfast</u>, 611 F.3d at 803-04. The Eleventh Circuit stated as follows with regard to this similar claim:

> [W]e reject Emmanuel's claim that the Torture Act is invalid because its official-conduct requirement uses the phrase "under the color of law," rather than the phrase "in an official capacity," as found in the CAT. The Senate Executive Committee charged with evaluating the CAT aptly explained that there is no distinction between the meaning of the phrases "under the color of law" and in "an official capacity":
>
> > The scope of the Convention is limited to torture "inflicted by or at the instigation or with the consent or acquiescence of a public official or other person acting in an official capacity." Thus,

> the Convention applies only to torture that occurs
> in the context of governmental authority, excluding
> torture that occurs as a wholly private act or, in
> terms more familiar in U.S. law, it applies to
> torture inflicted "under color of law."
>
> S. Exec. Rep. 101-30, at 14. Similarly, in the context of 42
> U.S.C. §1983, the Supreme Court has explained that "[t]he
> traditional definition of acting under color of state law
> requires that the defendant ... have exercised power possessed
> by virtue of state law and made possible only because the
> wrongdoer is clothed with the authority of state law.'" *West
> v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40
> (1988)(quoting *United States v. Classic*, 313 U.S. 299, 326, 61
> S.Ct. 1031, 85 L.Ed. 1368 (1941)); *see also Kadic v. Karadzic*,
> 70 F.3d 232, 245 (2d Cir. 1995)(looking to the §1983
> color-of-law jurisprudence for guidance on whether a defendant
> engaged in official action under the Alien Tort Statute).
> There is no material difference between this notion of
> official conduct and that imparted by the phrase "in an
> official capacity."
>
> In sum, we can discern no merit to any of Emmanuel's
> constitutional challenges to the way in which Congress defined
> torture in the Torture Act. If anything, the arguably more
> expansive definition of torture adopted by the United States
> is that much more faithful to the CAT's purpose of enhancing
> global efforts to combat torture.

<u>Id</u>. at 808-09.


Thus, for all these reasons, even if trial counsel's performance can in any way be deemed deficient for failing to challenge the jury instruction as to the color of law element, Movant has not demonstrated that he was prejudiced by counsel's action or inaction. <u>See</u> <u>Strickland</u>, <u>supra</u>. The law does not require counsel to raise every available non-frivolous defense. <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 121-23, 129 S.Ct. 1411, 1419-22 (2009). <u>See generally</u> <u>Chandler v. Moore</u>, 240 F.3d 907, 917 (11th Cir. 2001)(counsel is not ineffective for failing to raise a non-meritorious objection); <u>Card v. Dugger</u>, 911 F.2d 1494, 1520 (11th Cir. 1990)(holding that appellate counsel is not required to raise meritless issues). This is true even if there would have been "nothing to lose" from making such a motion. <u>Knowles</u>, 129 S.Ct. at

1419. An objection to the jury instructions on the grounds now raised by Movant were certain to lose, and trial and/or appellate counsel's failure to challenge the instruction does not violate any prevailing professional norms. See Knowles, 129 S.Ct. at 1422, citing, Strickland, supra, at 688, 104 S.Ct. 2052. See also Eagle v. Linahan, supra.

It appears as if Movant is also raising as an independent substantive claim that there is insufficient evidence to support his torture convictions in that the government failed to establish at trial that he acted under color of law. The government correctly argues that the claim is procedurally barred from review on the merits in this postconviction proceeding. As noted, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Massaro, 538 U.S. 500. See also Frady, 456 U.S. 152; Lynn, 365 F.3d at 1234-35. To overcome the bar, Movant must demonstrate cause for not raising the ground on direct appeal and actual prejudice resulting from the alleged error or he is actually innocent of the crimes convicted. Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 623   See also Bousley, 523 U.S. at 622; Jones, 153 F.3d 1305; Campino, 968 F.2d at 189-90.

The cause and prejudice standard requires the movant to show not only that "some objective factor external to the defense" impeded his efforts to raise the issue earlier, Coleman v. Thompson, 501 U.S. 722, 753 (1992), but also that the error he alleged "worked to his actual and substantial disadvantage." Frady, 456 U.S. at 170. "To establish actual innocence, the petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley 523 U.S. at 623, quoting, Schlup v Delo, 513 U.S.

25

298, 327-28 (1995).[21] The Supreme Court clarified that "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623. See also High v. Head, 209 F.3d 1257 (11th Cir. 2000). The Court concluded, "[I]f, on remand, petitioner can make that showing, he will then be entitled to have his defaulted claim ... considered on its merits." Id. at 624.

Movant failed to raise at trial or on direct appeal the ground presented here that the government failed to prove that he had acted under color of law. See DE# 599 at 203-04. Movant apparently contends that the claim was not raised on direct appeal, because trial counsel never preserved the issue for direct appeal and/or appellate counsel improperly failed to raise it. The claim of ineffective assistance of counsel may constitute cause for a procedural default. See generally Murray v. Carrier, 477 U.S. 478 (1986). However, "a[n] ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." Edwards v. Carpenter, 529 U.S. 446, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000). For the reasons expressed below, Movant cannot satisfy the cause and prejudice standard as to the ineffective assistance of trial and/or appellate counsel claim in that the underlying claim is meritless, resulting in no prejudice to Movant for trial counsel's failure to pursue the issue before or during trial and for appellate counsel's failure to raise the issue on direct appeal. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See also Smith v. Robbins, 528

---

[21]As the Supreme Court noted in *Schlup,* "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup v. Delo, 513 U.S. 298, 324 (1995).

U.S. 259, 285, 120 S.Ct. 746, 764 (2000), *citing*, <u>Smith v. Murray</u>, 477 U.S. 527, 535-536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986)(applying *Strickland* to claim of attorney error on appeal).

To determine whether either counsel rendered ineffective assistance, it must be determined whether there existed an arguable claim that the evidence was insufficient to support the convictions. Movant cites to various parts of the record and the government's responses to defense requests for discovery to support his claim that the government had no proof to establish the action under color of law element of the offenses charged in Counts Three through Seven of the second Superseding Indictment. <u>See</u> Motion to Vacate at 5-6, Exhibits A-C attached to motion to vacate. (Cv-DE# 1). It is apparent that Movant continues to labor under the misapprehension that the government was required to prove that he was a Liberian official. Rather, the government was required to prove beyond a reasonable doubt that Movant was a willful participant together with the governmental unit or its agents in the doing of the acts charged in the second Superseding Indictment. The government did just that. As pointed out by the government in its response, testimony at trial from the victims and other witnesses proved, at the least, that Movant acted in concert with the President of Liberia;[22] the general commanding the Special Security Service;[23] the ATU base commander at Gbatala;[24] Liberian

---

[22]<u>See e.g.</u>, Cr-DE# 587 at 147-53; Cr-DE# 588 at 185-90; Cr-DE# 590 at 93-4; Cr-DE# 592 at 165-87; Cr-DE# 598 at 25-41.

[23]<u>See e.g.</u>, Cr-DE# 592 at 165-75, 178-84, 187-88, 209, 213; Cr-DE# 593 at 36; Cr-DE# 594 at 42-43; Cr-DE# 598 at 29-41.

[24]<u>See e.g.</u>, Cr-DE# 585 at 219-22; Cr-DE# 587 at 150-51; Cr-DE# 588 at 188-90.

National Police officers;[25] and unnamed ATU soldiers.[26] Further, the evidence admitted at trial showed that Movant appeared in uniform;[27] gave orders to the ATU base commander and others;[28] and was known as "chief".[29] See also Belfast, 611 F.3d at 793-99 (extensive review of evidence admitted at trial).

Because the omitted claim would not have had a reasonable probability of success if raised during trial and/or on appeal, counsel was not constitutionally ineffective for not raising the claim. Movant has, therefore, not satisfied the cause and prejudice elements to escape the procedural bar. Movant also does not meet *Bousley*'s actual innocence exception to the *Frady* procedural bar rule. There has been no constitutional violation here that has probably resulted in the conviction of one who is actually innocent. And, Movant has come forward with no new, reliable evidence to demonstrate innocence. Movant cannot meet the high standard of factual innocence. See Schlup v. Delo, 513 U.S. at 327. See also Bousley v. United States, 523 U.S. at 623. Any attack on the sufficiency of the evidence is procedurally barred in this collateral proceeding, although effectively reviewed on the merits.

> 2.  Ground Two of Initial Motion to Vacate

Once again construing Movant's pro se pleadings with a liberal eye, it appears that Movant is claiming in **ground two** of the

---

[25] See e.g., Cr-DE# 592 at 157-69; Cr-DE# 598 at 18-20.

[26] See e.g., Cr-DE# 585 at 199-203; Cr-DE# 587 at 97-99, 111-12, 120-26, 137-40, 153; Cr-DE# 588 at 142-74, 190-92.

[27] See e.g., Cr-DE# 585 at 212.

[28] See e.g., Cr-DE# 585 at 217-222; Cr-DE# 586 at 8-14; Cr-DE# 588 at 172-73; Cr-DE# 591 at 209-11.

[29] See e.g., Cr-DE# 592 at 59-61; Cr-DE# 594 at 46-48; Cr-DE# 595 at 15. See also Cr-DE# 585 at 207-12 (movant confronted one victim in a room labeled "Office of the Commander"); GX BR 28, BR 45 (photographs of office)(Cr-DE# 584-1).

initial motion to vacate that he received ineffective assistance of appellate counsel, because his lawyer improperly failed to raise as an issue on direct appeal that this Court's jury instructions as to the crime of conspiracy resulted in a constructive variance of the crime charged in Count One of the superseding indictment.

Review of the record indicates that trial counsel requested the Court to instruct the jury regarding the object of the conspiracy to torture which the superseding indictment alleged was "to maintain, preserve, protect and strengthen the power and authority of Charles McArthur Taylor's presidency, and to intimidate, neutralize, punish, weaken and eliminate actual and perceived opponents of and threats to his administration by means of torture." See Cr-DE# 257; Cr-DE# 600 at 105-06, 120-22. Trial counsel maintained that the objectives specified in the Indictment were elements of the conspiracy offense which the jury was to find beyond a reasonable doubt. See Cr-DE# 600 at 120-22. The Court agreed with the government that the object of the conspiracy was not an element the government had to prove and, therefore, refused to give the requested defense instruction. Id. at 121. The Court extensively instructed the jury as to the general law with regard to the offense of conspiracy. See Cr-DE# 636 at 156-58, 161. The Court additionally instructed the jury that in order to convict in this case, it must find beyond a reasonable doubt that:

> two or more persons in some way or manner came to a mutual understanding to try to accomplish a common or unlawful plan, as charged in the indictment.

(Cr-DE# 636 at 161).

Movant contends that the Court's refusal to instruct the jury as requested by trial counsel resulted in a variance or amendment of Count One of the Indictment. Movant again fails to demonstrate the existence of a variance. When viewing the instructions given by

the Court as a whole, it is clear that the instructions were proper
in that they "adequately informed the jury that in order to
convict, it must find appellant joined in *the* conspiracy charged."
<u>United States v. Richardson</u>, 532 F.3d 1279, 1292 (11th Cir.
2008)(citation omitted)(emphasis in original), *cert. denied*, 555
U.S. 1120 (2009). For example, besides the above-quoted
instruction, the Court instructed the jury that what the evidence
in the case must show beyond a reasonable doubt was "that the
defendant knowingly or voluntarily joined or participated in the
conspiracy and ... that the object of the unlawful plan was to
commit torture, as charged." (Cr-DE# 636 at 156). Thus, whether or
not proof of the subject language contained in the Indictment as
the object of the conspiracy was a necessary element of the
conspiracy offense, the Court's instructions to the jury
constituted a fully sufficient and correct charge concerning
torture, the true object of the conspiracy as alleged in this case.

Moreover, when the jury found Movant guilty of the related
substantive crimes it resolved against him the issue whether he had
committed acts of torture and whether he had committed the acts
alleged as the object of the conspiracy in the now-subject language
of the superseding Indictment. Specifically, as pointed out by the
government, the evidence admitted at trial as to Counts Three and
Four established that Movant had confronted civilian victims with
accusations that they were rebels who had attacked the Liberian
town of Voinjama. (Cr-DE# 587 at 107). After these victims were
tortured and attempted to escape, Movant brought them to President
Charles Taylor, who asked if they were rebels and stated that if
they did not talk, they would be taken to the beach to have their
heads cut off and buried in the sand. (Cr-DE# 587 at 152; Cr-DE#
588 at 189-90). As to Count Five, the evidence admitted at trial
showed that soldiers seized that victim after discovering he
possessed a membership card for a rival political party. (Cr-DE#

30

585 at 204-07). Movant asked this victim if he was a rebel and whether he would fight for him, when the victim declined to fight, Movant had him taken to the ATU base at Gbatala where he was tortured. (Cr-DE# 585 at 211-12, 219-232; Cr-DE# 586 at 13-29). As to Count 6, which involves a victim who was captured by soldiers and accused of attempting to overthrow Charles Taylor, the evidence at trial showed that the soldiers took the victim to Taylor, who, in Movant's presence was tortured and forced to make a telephone call to discuss a presumed rebel operation. The victim was also asked how many United States soldiers the victim smuggled into the United States embassy and where the victim kept arms to overthrow Taylor's government. (Cr-DE# 592 at 154-56; 169-70, 186-87). And, Count Seven of the indictment concerned a victim who never knew what he was accused of, but was of Mandingo ethnicity, a group which had opposed Taylor during the civil war preceding his presidency. (Cr-DE# 592 at 143; Cr-DE# 594 at 16-20; Cr-DE# 598 at 20-1, 28).

Additionally, Movant's apparent assertion that every allegation in the Indictment had to be proved by the government is also without merit. Allegations in the indictment that are not necessary to establish a violation of a statute are surplusage and may be disregarded if the remaining allegations are sufficient to charge a crime. United States v. McIntosh, 23 F.3d 1454, 1457 (8th Cir. 1994). Since superfluous allegations are not part of the charged offense and may be disregarded, the government is not required to prove those allegations in order to obtain a conviction. See United States v. Rosenthal, 9 F.3d 1016, 1023 (2d Cir. 1993) ("[A]llegations in an indictment that go beyond the essential elements which are required for conviction do not increase the Government's burden"). The government need only prove "that the defendant is guilty of every element of the crime with which he is charged[.]" See United States v. Gaudin, 515 U.S. 506,

31

508-10, 115 S.Ct. 2310, 2313, 132 L.Ed.2d 444 (1995). That was done here, since all the essential elements of the crime charged in Count One was submitted to the jury and a conviction resulted. And, striking superfluous allegations does not result in an impermissible constructive amendment of an indictment. See United States v. Begnaud, 783 F.2d 144, 147 (8th Cir. 1986)(stating that a constructive amendment occurs when the jury is "allowed ... to convict the defendant of an offense different from or in addition to the offenses alleged in the indictment." In this case, the Court did not improperly "permit a defendant to be tried on [a] charge that [is] not made in the indictment against him." Stirone v. United States, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960). See also United States v. Wells, 127 F.3d 739, 743 (8th Cir. 1997).

Since the instructions given by the Court were clearly sufficient and the evidence at trial proved the object of the torture conspiracy charged in the indictment, resulting in no variance, the outcome of the appeal would not have been altered even if appellate counsel had raised the subject issue. Consequently, appellate counsel's performance cannot be considered constitutionally ineffective for not raising as an issue on direct appeal that this Court's jury instructions regarding the crime of conspiracy resulted in a constructive variance of the crime charged in Count One of the superseding indictment. See Strickland, supra. As stated above, appellate counsel has no duty to raise meritless issues. Knowles v. Mirzayance, 556 U.S. at 121-23, 129 S.Ct. at 1419-22; Card v. Dugger, 911 F.2d at 1520. Because the issue was certain to be unsuccessful on direct appeal, appellate counsel's failure to challenge the jury instructions with regard to the conspiracy offense charged in Count One does not violate any prevailing professional norms. See Knowles, 129 S.Ct. at 1422, citing, Strickland, supra, at 688, 104 S.Ct. 2052. See also Eagle

v. Linahan, supra.

3. Ground Three of Initial Motion to Vacate
and
Ground Three of Supplemental Pleading

Movant claims in **ground three** of both the initial motion and supplemental pleading that trial counsel improperly failed to object when Wesley Sieh's hearsay testimony was admitted pursuant to Fed.R.Evid. 801(d)(2)(C) and (D). As indicated above, under Movant's direction, the ATU's recruits were installed at a training camp known as Gbatala Base. Wesley Sieh was one such recruit. Sieh testified at trial about conversations he had with former NPFL commander Siafa Normah regarding the formation of the ATU, the purpose of the ATU, and events that occurred at Gbatala. Sieh also testified about the abuse and torture to which the ATU recruits were subjected as punishment, often alongside the ATU's prisoners. The base was under the command of David Compari and Compari took his orders from Movant, who appeared several times a week dressed in uniform. Movant ordered Compari to torture victim Kpadeh and that torture was set out in detail during the trial. Movant claims in this §2255 proceeding that trial counsel failed to properly object to Sieh's testimony describing statements of his former commander, Siafa Normah, and the ATU base commander, David Compari.

Contrary to Movant's claim, trial counsel did in fact object on the basis of hearsay to several portions of Sieh's testimony. See e.g., Cr-DE# 591 at 157, 158, 159, 160, 165, 168, 181, 216, 217. See also Brief of the Appellant at 58 (listing examples of alleged improper hearsay admitted during the trial)(Cv-DE# 10-25).[30]

_____

[30]In his brief, Emmanuel offered six alleged examples of hearsay in a bullet-point list. See Brief of the Appellant at 58.

Although the objections were unsuccessful, lack of success does not demonstrate unconstitutional performance under *Strickland*. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 688. Further, this Court properly overruled the objections, finding the statements admissible pursuant to Fed.R.Evid. 801(d)(2). The objections were preserved for direct appeal and appellate counsel challenged the admission of the subject testimony. In its opinion, the Eleventh Circuit affirmed this Court's rulings, stating in relevant part:

> It was not improper for the district court to admit Sieh's testimony about Normah's statements regarding Emmanuel's instructions on the formation of the ATU. Under Fed.R.Evid. 801(d)(2)(C), this testimony was an admission by a party-opponent; it was a "statement by a person authorized by the party to make a statement concerning the subject," and thus was admissible hearsay. Fed.R.Evid. 801(d)(2)(C). In particular, Normah's statements to Sieh were admissible because they concerned the same matter for which Emmanuel was employing Normah, namely, to recommend men for the ATU. Put differently, Emmanuel hired Normah to find him soldiers to form the ATU. Normah then, in the process of finding ATU recruits, asked Sieh, an experienced Liberian soldier in Taylor's army, to join the ATU on Emmanuel's behalf. The district court did not abuse its discretion in admitting this evidence.
>
> Further, as the district court found, Sieh's description of the horrifying punishments imposed on the ATU soldiers was relevant to the government's case. In particular, his testimony provided an explanation as to how Emmanuel was able to force the ATU soldiers into carrying out his orders to torture others. The testimony also demonstrated Emmanuel's position as a superior to the ATU soldiers. In addition, many of the tactics used to punish disobedient ATU soldiers were the same as those used to torture the prisoners. Thus, for example, both the punished soldiers and Emmanuel's victims were required to "run the rim," again, an exercise in which the subject would run in a large circle around posts, all the while carrying on one shoulder a heavy log that was struck repeatedly with a heavy metal rod. In short, Sieh's testimony also corroborated the testimony of other government witnesses and showed that Emmanuel was aware of the methods of torture he was alleged to have employed on his victims.

Belfast, 611 F.3d at 820-21.

Movant also claims that counsel improperly failed to object to testimony regarding Sieh's and/or Compari's employment by the NPFL or ATU, their respective duties, and their "agency relationship" with Movant and/or Movant's father. As correctly asserted by the government, Sieh's statements that he joined the ATU, that Compari was his commander, and that Sieh had duties and a rank, are all matters that Sieh would have known through personal observation. Thus, the testimony does not constitute inadmissible hearsay. See Fed.R.Evid. 801(c). Further, Sieh's testimony as to his own observations that Movant issued orders to Compari, who would execute them, and that Compari answered to movant is also not hearsay. See Cr-DE# 591 at 210-11. From the evidence discussed above, it is clear that Compari took orders from Movant and Sieh had been recruited by Normah on Movant's behalf. Sieh's statements concerned matters within the scope of his "employment," or "agency" relationship and were, therefore, fully admissible under Fed.R.Evid. 801(d)(2)(D). Moreover, contrary to Movant's additional argument, there was in fact evidence of Compari's existence and that Compari acted at the behest of the Movant, thereby, establishing an employment or agency relationship. See Cr-DE# 585 at 219-26; Cr-DE# 591 at 183-92. Accordingly, even if trial counsel did not lodge an objection to any testimony Movant believes warranted an objection, counsel's performance was not defective in that no objection was warranted. There are any number of legitimate strategic reasons trial counsel may have elected not to lodge any additional objections to Sieh's testimony, and nothing in the existing record suggests that it was the result of deficient performance. See Strickland, supra

Even if trial counsel's performance could in some way be viewed as deficient, Movant cannot satisfy the prejudice-prong of

*Strickland*. Before the government concluded its direct examination of Sieh, trial counsel argued that Sieh's entire trial testimony should be stricken in that it effectively resulted in the constructive amendment of the Indictment and that, if not stricken, a mistrial or dismissal of the case should be granted. See Cr-DE# 591 at 236-39, 240-41. This Court found the testimony admissible and, therefore, denied the defense requests. Id. at 241-42. Movant's alternate argument that trial counsel should have objected to the subject testimony as violative of the principles enumerated in Crawford v. Washington, 541 U.S. 36 (2004),[31] is also unavailing. As indicated, Sieh's statements fell squarely within Rule 801(d)(2)(D) and were admissible non-hearsay. See generally, United States v. Yi, 460 F.3d 623, 634 (5th Cir. 2006).

Even if any or all of the now-challenged testimony had been excluded, in light of the otherwise properly admitted evidence of Movant's guilt, which was extensively described by the Eleventh Circuit in its lengthy opinion on direct appeal, there was more than ample evidence of Movant's guilt. Thus, it is apparent that the admission of the subject testimony was at worst no more than harmless error. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946)(a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict). This is true even assuming that a *Crawford*-type error occurred. Any constitutional error resulting from admitting the subject testimony was harmless. See United States v. Travis, 311 Fed.Appx. 305, 311

---

[31]In brief, the Supreme Court held in *Crawford* that the Confrontation Clause bars the admission of testimonial out-of-court statements, unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine him. Crawford v. Washington, 541 U.S. 36, 68 (2004). In doing so, the Supreme Court dispensed with the reliability test articulated in *Ohio v. Roberts*, which admitted out-of-court statements if they fell within a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

(11th Cir. 2009)(noting that Confrontation Clause errors are subject to harmless error analysis, *citing*, <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). Since Movant has not demonstrated a reasonable probability that in the absence of the alleged improper testimony, the outcome of the trial would have been different, he cannot show that his convictions are the result of constitutionally ineffective assistance of counsel. <u>See e.g.</u>, <u>Chandler v. Moore</u>, 240 F.3d 907, 914 (11th Cir. 2001)(concluding prosecutorial comments did not rise to fundamental error, and Chandler's counsel could not be deemed ineffective for failing to object to such).

Movant also seems to claim that appellate counsel rendered ineffective assistance when he offered six examples of hearsay testimony by way of a bullet-point-type list. <u>See</u> Brief of the Appellant at 58. The Eleventh Circuit declined to address these additional challenges to the evidence, finding that Movant had failed to explain in any manner why the statements should not have been admitted. <u>United States v. Belfast</u>, 611 F.3d 783, 821 (11th Cir. 2010), *citing*, <u>United States v. Gupta</u>, 463 F.3d 1182, 1195 (11th Cir. 2006)("We may decline to address an argument where a party fails to provide arguments on the merits of an issue in its initial or reply brief. Without such argument the issue is deemed waived."). Even if appellate counsel's performance could be viewed as deficient for not providing a sufficient explanation for these challenges, Movant cannot satisfy the prejudice prong of *Strickland* in that even if the evidentiary challenges had been properly raised on direct appeal it is apparent that the outcome of the appeal would not have been different.[32] <u>See</u> <u>Strickland v. Washington</u>,

---

[32]The government addressed the evidentiary challenges, arguing that (1) the testimony regarding Normah's additional statements were admissible under <u>Fed.R.Evid</u>. 801(d)(2)(C) and (d)(2)(D); (2) admission of Compari's statements were subject only to plain-error review and were nonetheless admissible, because the statements concerned Compari's employment as base commander and furthered the conspiracy, *citing*, <u>Fed.R.Evid.</u> 801(d)(2)(D), (d)(2)(E); (3) Dumbaya's statement

*supra*. See also Smith v. Robbins, 528 U.S. 259, 285, 120 S.Ct. 746, 764 (2000), *citing*, Smith v. Murray, 477 U.S. 527, 535-536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986)(applying *Strickland* to claim of attorney error on appeal).

## D. Conclusion

In conclusion, it is clear from the record when viewed as a whole that the petitioner received effective assistance of trial and appellate counsel under the Sixth Amendment standard. See Strickland v. Washington, *supra*. The fact that the defense presented at trial was not successful and the convictions were not reversed on direct appeal does not mean that the performance of either counsel was constitutionally ineffective. Trial counsel certainly subjected the prosecution's case to a meaningful adversarial testing. See United States v. Cronic, 466 U.S. 648, 659 (1984). And, appellate counsel presented all grounds that had the greatest chance for success. See Jones v. Barnes, 463 U.S. at 751-52, 103 S.Ct. at 3313 (stating, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Movant is, therefore, entitled to no relief in this collateral proceeding arising from any alleged deficient performance or prejudice suffered in relation to counsel's performance during trial or on direct appeal. Moreover, the record simply does not reflect an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. See Brecht v. Abrahamson, 507 U.S. at 637-38.

---

was not hearsay, because it explained Turay's and Jusu's subsequent escape from Gbatala Base; (4) Jusu's out-of-court statement that Movant was his torturer was subject to plain-error review and was nonetheless properly admitted because Jusu made it while identifying Movant from a photograph, *citing*, Fed.R.Evid. 801(d)(1)(C), and Jusu had identified Movant in-court after testifying that Movant had tortured him; and (5) the statement by ATU soldiers to Kpadeh was admissible under Fed.R.Evid. 801(d)(2)(C) and (d)(2)(D). See Brief for the United States at 59-60. (Cv-DE# 10-24).

## VI. <u>Certificate of Appealability</u>

As amended effective December 1, 2009, §2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2255 Proceedings, Rule 11(b), 28 U.S.C. foll. §2255.

After review of the record, Movant is not entitled to a certificate of appealability. "A certificate of appealablilty may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." <u>Id</u>. 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Movant must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. <u>Slack v. McDaniel</u>, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). <u>See also</u> <u>Eagle v. Linahan</u>, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims raised are procedurally barred and/or clearly without merit, Movant cannot satisfy the *Slack* test. <u>Slack</u>, 529 U.S. at 484.

As now provided by Rules Governing §2255 Proceedings, Rule 11(a), 28 U.S.C. foll. §2255: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VII.  <u>Recommendation</u>

Based upon the foregoing, it is recommended that the motion to vacate be denied,[33] and no certificate of appealability should issue.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 17th day of October, 2012.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Roy M. Belfast, Jr., Pro Se
      Reg. No. 76556-004
      Big Sandy-USP
      United States Penitentiary
      P.O. Box 2068
      Inez, KY 41224

      Karen E. Rochlin, AUSA
      U.S. Attorney's Office
      99 N.E. 4th Street
      Miami, FL 33132

      Caroline Heck Miller, AUSA
      U.S. Attorney's Office
      99 N.E. 4th Street
      Miami, Florida 33132

      Christopher Graveline, AUSA
      U.S. Attorney's Office
      211 Fort Street, Suite 2001
      Detroit, Michigan 48226

      John-Alex Romano
      Criminal Division
      U.S. Department of Justice
      950 Pennsylvania Avenue, NW

---

[33]The undersigned has thoroughly and carefully reviewed Movant's motion to vacate as well as all of his subsequent pleadings which essentially are lengthy, rambling narratives. Any additional claims or subclaims not specifically addressed in this Report are found to be without merit.

Room 1264
Washington, D.C. 20530