UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-20754-CIV-ALTONAGA/White

**ROY M. BELFAST, JR.**,

    Movant,
vs.

**UNITED STATES OF AMERICA**,

    Respondent.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Magistrate Judge Patrick A. White's ("Judge White['s]") Report of Magistrate Judge ("Report") [ECF No. 13],[1] entered on October 17, 2012. On February 23, 2012, Movant, Roy M. Belfast ("Belfast") filed a *pro se* Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside and Correct Sentence ("Motion") [ECF No. 1]. The Clerk referred the case to Magistrate Judge White under Administrative Order 2003-19 for a report and recommendation on any dispositive matters. (*See* [ECF No. 3]). On April 13, 2013 — approximately two months after filing his motion — Belfast sought leave to file a supplement to the Motion ("Supplement") (*see* [ECF No. 6]), which the Magistrate Judge granted, subject to all applicable procedural bars, and required the Respondent to respond to both the Motion and the Supplement (*see* [ECF No. 7]). Respondent, the United States of America ("Government"), then filed its Response in Opposition . . . [ECF No. 10], on April 27, 2012, to which Belfast replied ("Reply") [ECF No. 12], on May 25, 2012.

---

[1] Citations to docket entries in case number 12-20754-CIV-ALTONAGA are referenced as "ECF No." Citations to docket entries in the underlying criminal case, number 06-20758-CR-ALTONAGA, are referenced as "Cr. ECF No."

In his Report, Judge White recommends the Motion be denied, and a certificate of appealability should not issue. (*See* Report 40). Belfast filed his Reply to the Magistrate Judge's Report and Recommendation ("Objections") [ECF No. 14], on November 5, 2012. The Government filed a Response in Opposition to Movant/Petitioner's "Reply" . . . ("Response") [ECF No. 19], on December 21, 2012. The Court has carefully reviewed the parties' filings, pertinent portions of the criminal file, and applicable law.

## I. BACKGROUND

By way of background, the Motion arises out of an eight-count Second Superseding Indictment ("Indictment") [Cr. ECF No. 257] returned by a grand jury, charging Belfast with conspiracy to commit torture in Liberia against seven unnamed victims, in violation of 18 U.S.C. section 2340A(c) (Count I); conspiracy to use and carry a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. section 924(o) (Count II); committing substantive crimes of torture against five named victims, in violation of 18 U.S.C. section 2340A(a) (Counts III–VII); and using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. section 924(c)(1)(A) (Count VIII). (*See* Report 6–7; *see also* Indictment). Belfast entered "not guilty" pleas to the crimes charged and the case proceeded to trial before a jury. (*See* Report 7; *see also* Arraignment Information Sheet [Cr. ECF No. 260]).

Before trial, Belfast — while represented by counsel — filed a Motion to Dismiss the Indictment ("Motion to Dismiss") [Cr. ECF No. 38]. Belfast argued, *inter alia*, 18 U.S.C. section 2340[2] ("Section 2340") was unconstitutionally vague for failing to define various terms,

---

[2] Section 2340A provides, "Whoever outside the United States commits or attempts to commit torture shall be fined under this title or imprisoned not more than 20 years, or both . . . ." 18 U.S.C. § 2340A. "Torture" is defined as "an act committed by a person *acting under the color of law* specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful

including the element of action under color of law. (*See* Mot. to Dismiss 17). Belfast further contended the statute was unconstitutional in that its definition of torture was materially different and much broader than the definition set forth in the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, Dec. 10, 1984, S. TREATY DOC. NO. 100-20 (1988), 1465 U.N.T.S. 85 ("Treaty"). (*See* Mot. to Dismiss Reply 4–5 [Cr. ECF No. 83]). Specifically, Belfast asserted Section 2340's requirement of action under "color of law" was improper, as the Treaty referred to a "public official" or someone "acting in an official capacity." (*Id.* 4).

The Court denied Belfast's Motion to Dismiss, holding it was unnecessary for the relevant statute to track the language of the Treaty verbatim. (*See* Order dated July 5, 2007 ("July 5 Order"), at 13 [Cr. ECF No. 148]). The Court further found the statute did parallel the definition found in the Treaty. (*See id.* 13). While rejecting a separate argument, the Court observed that Belfast was specifically charged with action taken under color of law and not action taken in an official capacity. (*See id.*). The Court concluded "even non-government[al] employees" could be charged with acting under color of law. (*Id.* 23).

At trial, the Government called witnesses to testify regarding Belfast's activities in Liberia. *See United States v. Belfast*, 611 F.3d 783, 793–99 (11th Cir. 2010) (detailing the facts established at trial). After a one-month trial, the jury convicted Belfast of all crimes charged in the Indictment. (*See id.* at 800). The Court adjudicated Belfast guilty of all the crimes, and sentenced him to a total term of imprisonment of ninety-seven years. (*See id.* at 801).

Through counsel, Belfast filed a direct appeal from his convictions and sentence, arguing:

---

sanctions) upon another person within his custody or physical control." 18 U.S.C. § 2340 (emphasis added). "Acting under the color of law" is not defined in the statute.

(1) Sections 2340 and 2340A (collectively, the "Torture Act") were unconstitutional in that they impermissibly exceeded the bounds of the Treaty both in the definition of torture and the proscription against conspiracies to commit torture; (2) the convictions under 18 U.S.C. section 924(c) were unlawful because that provision could not apply extraterritorially to actions in Liberia; (3) an accumulation of procedural errors rendered the trial fundamentally unfair; and (4) the sentence imposed was unlawful for several reasons. *See Belfast*, 611 F.3d at 793. On July 15, 2010, the Eleventh Circuit affirmed the convictions and sentence, rejecting all of Belfast's arguments. *Id.* at 828. The United States Supreme Court denied Belfast's petition for writ of certiorari on February 22, 2011. *See Belfast v. United States*, 131 S. Ct. 1511 (2011).

On February 16, 2012, almost a year after his petition for writ of certiorari was denied, Belfast filed the instant Motion seeking relief under 28 U.S.C. section 2255 ("Section 2255"). Belfast asserts the following three claims for relief in his Motion:

> (1) appellate counsel improperly failed to raise as an issue on direct appeal that this Court's jury instruction, defining "color of law," resulted in an unlawful variance of the superseding Indictment;
>
> (2) appellate counsel improperly failed to raise as an issue on direct appeal that this Court's jury instructions created a variance from, or constructive amendment to, the allegations of Count 1 of the superseding [I]ndictment, charging a conspiracy to torture; and
>
> (3) trial counsel improperly failed to object when Wesley Sieh's hearsay testimony was admitted pursuant to Federal Rules of Evidence 801(d)(2)(C) and (D).

(Report 2). Belfast asserts the following additional claims in his Supplement, as described in the Report:

> (1) appellate counsel failed to properly challenge on direct appeal the admission of certain hearsay testimony set forth as a list of bullet points;
>
> (2) appellate counsel failed to challenge on direct appeal his [s]ection 924(c) conviction in that the offense required proof of the firearm's nexus to interstate or

foreign commerce;

(3) trial counsel failed to properly object to the admission of Wesley Sieh's testimony; and

(4) trial counsel failed to object to the "color of law" portion of the jury instruction and appellate counsel failed to raise the issue on direct appeal.

(*Id.*). The Court agrees with the Report's characterization of the claims asserted in the Motion and Supplement.

## II. ANALYSIS

The Court addresses the Report's analysis of each argument under a *de novo* standard of review. *See* FED. R. CIV. P. 72(b)(3) (When a magistrate judge's "disposition" has properly been objected to, district courts must review the disposition *de novo*). Because all of Belfast's claims allege ineffective assistance of counsel (both trial and appellate), the claims must be reviewed pursuant to the test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). The test provides:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. Belfast's claims must be reviewed to determine if trial or appellate counsel was deficient; and if a deficiency exists, then the Court must determine whether it prejudiced Belfast.

As an initial matter, however, the Court must ascertain whether the ineffective assistance of counsel claims asserted in the Supplement were timely filed. Generally, "[a] 1-year period of limitation shall apply to a motion under" Section 2255. 28 U.S.C. § 2255(f). The one-year

limitation period begins when "the judgment of conviction becomes final." *Id.* § 2255(f)(1). Belfast's convictions and sentence became final on February 22, 2011, the date the Supreme Court denied Belfast's petition for a writ of certiorari. *See Clay v. United States*, 537 U.S. 522, 527 (2003) (citations omitted) ("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). Belfast timely filed his Motion, but his Supplement was filed after the one-year deadline.

Belfast may amend or supplement his Motion "as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. However, an amendment to a pleading only relates back to the date of the original pleading in limited circumstances, including when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(B); *see also United States v. Gonzalez*, 592 F.3d 675, 679 (5th Cir. 2009) ("[The movant] first argues that his new claim is not time-barred because it relates back to his original § 2255 pleading under Federal Rule of Civil Procedure 15(c)(1). It is well settled that Rule 15 applies to federal habeas proceedings."). When determining whether to permit relation back, the Court must determine whether "the claims added by amendment arise from the same core facts as the timely filed claims." *Mayle v. Felix*, 545 U.S. 644, 657 (2005). Amendments do not relate back "when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Id.* (quoting *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999)).

Here, the first and second claims asserted in the Supplement are, generally speaking, ineffective assistance of counsel claims; however, neither arises from the same core facts as the timely-filed claims and each is supported by different facts than the original claims.

Accordingly, the first and second additional ineffective assistance of counsel claims in the Supplement do not relate back to the original, timely-filed Motion and are time-barred. *See Gonzalez*, 592 F.3d at 680 (citation and internal quotation marks omitted) ("New claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision. Rather, we must look to whether [the defendant's] new claim asserts a 'new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'") (citation omitted).

The Court reaches a different result regarding claims three and four in the Supplement, as these claims are premised on the same "core facts" as those asserted in the Motion. *Mayle*, 545 U.S. at 657. Claim three — regarding the testimony of Wesley Sieh — challenges the same subject matter as the third claim in the Motion, and the two will be considered together. Additionally, claim four in the Supplement is an expansion of the first claim of the Motion concerning a disputed jury instruction. As such, these two related claims will also be considered jointly. Thus, claims three and four of the Supplement relate back to the original Motion.

The Court's *de novo* review of the permissible arguments made in the Motion and Supplement will preliminarily proceed with the disputed "color of law" jury instruction. Next, the Court will evaluate the arguments with respect to the conspiracy to torture jury instruction, and conclude with an analysis of the admission of Wesley Sieh's testimony.

    A.    **"Color of Law" Jury Instruction (Claim 1 of the Motion and Claim 4 of the Supplement)**

Belfast contends trial counsel failed to object to the "color of law" portion of the jury instruction and appellate counsel failed to raise the issue on appeal. (*See, e.g.*, Mot. 7). Belfast maintains individuals who were not officials of the Liberian government cannot act under color of law. (*See, e.g.*, *id.*). Judge White concludes the instruction was proper because a defendant

need not be a government official to act under color of law, and the Indictment did not charge Belfast with action taken in an official capacity, but with action taken under color of law. (*See* Report 21–22). Belfast objects to this finding, arguing the Government was restricted to proving he acted as a government official and the Government failed to meet this burden. (*See* Objections 2–3).

The Court finds the Report properly confirms the rule that a defendant need not be a government official to act under color of law. *See United States v. Price*, 383 U.S. 787, 794 (1966) (footnote call number omitted) ("To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents."). Belfast's contention is premised on a misinterpretation of the holding in *United States v. Haimowitz*, 725 F.2d 1561 (11th Cir. 1984). While Belfast admits that there are at least two ways to prove a defendant acted under "color of law," he seizes on language in *Haimowitz* to argue "non-government employees may be considered to be acting under color of law [only] if at the direction of government agents." (Objections 2) (alteration added). Belfast continues, "[T]he [I]ndictment speaks specifically of the defendant ordering other's [sic] not vice versa." (*Id.*). However, the facts in *Haimowitz* presented a different question to the Eleventh Circuit than is presented here, namely: "whether [an individual] was acting at the direction of the government" when he engaged in certain activities on his own. *Haimowitz*, 725 F.2d at 1582. *Haimowitz* did not hold that the only way for a private individual to act under color of law is at the direction of a public official.

As previously mentioned, "[i]t is enough that [Belfast] is a willful participant in joint activity with the State or its agents." *Price*, 383 U.S. at 794. Put differently, Belfast could give and receive orders — so long as it was in conjunction with the Liberian government — and still

8

qualify as acting under color of law. Thus, Belfast's objection incorrectly assumes a strained definition of "color of law" which is not supported by the relevant case law, and the jury was properly instructed on the color of law element of the torture charges.

Moreover, in its Order denying Belfast's earlier Motion to Dismiss, the Court recognized Belfast was charged with "acting under color of law" and not with acting in his official capacity. (July 5 Order 23). As such, the specific nature of the charges was revealed before trial and the jury instruction was in accordance with established law. Because no error was present, trial counsel was not ineffective for failing to object to the jury instruction and appellate counsel was not ineffective for declining to raise a meritless issue on appeal. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation omitted) ("[T]his Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.").

Belfast additionally argues the evidence at trial produced a variance[3] from the Indictment, or the jury instructions constructively amended the Indictment. (*See, e.g.*, Mot. 7–8). Judge White concludes no variance occurred because the facts proved at trial did not differ so greatly from the charges that Belfast was unfairly surprised. (*See* Report 23). Belfast generally objects to this finding, restating his argument from his Motion. (*See* Objections 5).

As the Eleventh Circuit has stated:

> The standard of review for whether there is a material variance between the allegations in the indictment and the facts established at trial is twofold: First, whether a material variance did occur, and, second, whether the defendant suffered substantial prejudice as a result. . . . A variance occurs when the evidence at trial establishes facts materially different from those alleged in the indictment. To find substantial prejudice, we have ordinarily considered whether the proof at trial differed so greatly from the charges that appellant was unfairly surprised and was unable to prepare an adequate defense.

---

[3] Belfast seems to conflate "material variance" and "constructive amendment" throughout his filings in this Section 2255 motion. In an abundance of caution, the Court will consider his claims under both standards.

*United States v. Lander*, 668 F.3d 1289, 1295 (11th Cir. 2012) (internal quotation marks and citations omitted).  Here, the Report correctly concludes there was no unfair surprise and hence no variance.  The evidence was in accordance with the language of the Indictment, and the Court made clear that Belfast was not being charged in an official capacity.  Indeed, the Court's July 5 Order plainly illuminated the charges as "misuse of power" because the "wrongdoer is *clothed* with authority of law."  (July 5 Order 23) (emphasis added).

Judge White similarly finds no constructive amendment as the jury instructions tracked the language of the Indictment and the Court specifically advised Belfast before trial he had not been charged with acting as an official, but with acting under color of law.  (*See* Report 23).  Belfast generally objects to this finding, again restating his argument from his Motion.  (*See* Objections 4).

"An indictment is constructively amended 'when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment.'"  *United States v. Dortch*, 696 F.3d 1104, 1111–12 (11th Cir. 2012) (quoting *United States v. Keller*, 916 F.2d 628, 634 (11th Cir. 1990)).  Here, the Indictment expressly described Belfast's purported actions "while acting under color of law," and offered no distinction between his status as an official or non-official government agent.  (Indictment, at 13–16).  The jury instructions defined "under color of law" and instructed that a conviction was permissible if Belfast "was a willful participant together with the governmental unit or its agent."  (October 28, 2008 Trial Tr. 160:20–21 [Cr. ECF No. 636]).  Because the Indictment contained no language limiting the charges to actions taken as a government official, the instructions permitting a conviction on alternative grounds did not constructively amend the Indictment by "broaden[ing] the possible bases for conviction."  *Dortch*, 696 F.3d at 1111–12.

As such, the ineffective assistance of counsel claim fails because Belfast's counsel was not required to pursue a frivolous argument at trial or on appeal. *See Knowles*, 556 U.S. at 123.

Finally, Belfast contends there was insufficient evidence to support the "color of law" element of the torture convictions because the Government did not establish that Belfast was a willful participant and acted in concert with various Liberian officials. (*See, e.g.*, Mot. 7). The Report determines there is no merit to this claim as the Government amply established that Belfast acted under color of law. (*See* Report 27–28).

The trial record is replete with evidence establishing Belfast acted under color of law as he was "a willful participant in joint activity with the State or its agents." *Price*, 383 U.S. at 794 (footnote call number omitted). The evidence indicates Belfast oversaw the creation of the "Anti-Terrorism Unit" as his self-proclaimed "pet project," wore the special uniform of that unit, commanded other state agents, was referred to as "Chief," and engaged in other indicia of acting in concert with the government. *See Belfast*, 611 F.3d at 793–99. Such evidence sufficiently supports the allegation that Belfast was a willful participant in joint activity with the State. Accordingly, Belfast's appellate counsel was not ineffective for foregoing a plainly meritless challenge to the sufficiency of the evidence.

Based on the foregoing, the Court agrees with Judge White's conclusion that Belfast's claims of ineffective assistance of counsel with respect to the "color of law" jury instruction are refuted by the record and have no merit.

**B.     Conspiracy to Torture Jury Instruction (Claim 2 of the Motion)**

Belfast's second claim in his Motion is that appellate counsel failed to challenge the Court's jury instruction on conspiracy to torture as creating a variance from, or amendment to, the allegations in the Indictment. (*See, e.g.*, Mot. 8–9). The Report gives multiple reasons

11

precluding relief for Belfast on this claim. Specifically, the Report concludes: (1) the instructions did not result in a variance or amendment as they constituted a wholly sufficient and correct charge concerning torture as the true object of the conspiracy (*see* Report 30); (2) the jury's verdict definitively resolved the issue of whether Belfast committed the particular acts alleged as the object of the conspiracy in the Indictment (*see id.*); and (3) allegations in the Indictment "that are not necessary to establish a violation of a statute are surplusage and may be disregarded if the remaining allegations are sufficient to charge a crime" (*id.* 31). Belfast objects to these conclusions, arguing the jury instructions on the conspiracy charge impermissibly stated he could be found guilty if the object of his unlawful plan was to commit torture as charged. (*See* Objections 9–10). Belfast maintains the conspiracy instruction must have included language[4] in the Indictment specifically depicting the object of the conspiracy. (*See id.*).

It is again difficult to discern whether Belfast argues the conspiracy to torture jury instructions constructively amended the Indictment, or the evidence offered at trial caused a variance from the Indictment. To be certain whether Belfast is entitled to relief, the Court evaluates his claims under both doctrines. As to the constructive amendment issue, Judge White properly concludes the trial court correctly denied Belfast's requested jury instructions because the extra allegations in the Indictment were not necessary to establish conspiracy to torture.

"An amendment occurs when the essential elements of the offense set forth in the indictment are altered, either actually or in effect, by the prosecutor or the court after the grand jury has passed upon them." *United States v. McIntosh*, 23 F.3d 1454, 1457 (8th Cir. 1994)

---

[4] Belfast requested the jury instructions repeat language in the Indictment alleging the object of the conspiracy was to "maintain, preserve, protect and strengthen the power and authority of Charles McArthur Taylor's presidency, and to intimidate, neutralize, punish, weaken and eliminate actual and perceived opponents of and threats to his administration by means of torture." (Objections 9).

(citations and internal quotations marks omitted). "A jury instruction that constructively amends an indictment is normally *per se* reversible error because such an amendment violates a defendant's Fifth Amendment right to be charged by a grand jury indictment." *United States v. Cabrera*, 284 F. App'x 674, 683 n.12 (11th Cir. 2008) (citation omitted). Nevertheless, "[a] court may ignore independent and unnecessary allegations in an indictment. Allegations in the indictment that are not necessary to establish a violation of a statute are surplusage and may be disregarded if the remaining allegations are sufficient to charge a crime." *McIntosh*, 23 F.3d at 1457; *see also United States v. Rosenthal*, 9 F.3d 1016, 1023 (2d Cir. 1993) ("While it is the Government's burden to prove the essential elements of a charged crime, allegations in an indictment that go beyond the essential elements which are required for conviction do not increase the Government's burden.").

In order to charge conspiracy to torture, the conspiracy offense only requires the underlying torture offense be the object of the conspiracy. *See* 18 U.S.C. § 2340A(c) ("Conspiracy.— A person who conspires to commit an offense under this section shall be subject to the same penalties . . . as the penalties prescribed for the offense, the commission of which was the object of the conspiracy."). Here, the jury instructions provided the evidence must prove beyond a reasonable doubt "that the defendant knowingly or voluntarily joined or participated in the conspiracy and . . . that *the object of the unlawful plan was to commit torture, as charged*." (October 28, 2008 Trial Tr. 156:23–25) (emphasis added). The instructions gave the jury the necessary elements to properly charge the crime, and permissibly declined to include the surplusage allegations contained in the Indictment.

The instructions did not constructively amend the Indictment because the essential elements of the offense were not altered to "broaden the possible bases for conviction beyond"

13

what was contained in the Indictment. *United States v. Augustin*, 661 F.3d 1105, 1116 (11th Cir. 2011) (citations and internal quotations marks omitted) ("[C]ongress defines the elements of an offense, not the charging document. So, as long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime."). The jury instructions did not broaden the possible bases for conviction by accurately stating the fundamental elements of conspiracy to torture. As such, the Court did not constructively amend the Indictment, the instructions were proper, and counsel was not ineffective for failing to appeal a meritless claim.

Moreover, the evidence at trial did not constitute a variance from the Indictment. "[A] variance in the indictment occurs when the essential elements of the offense set forth in the indictment are left unaltered but the evidence offered at trial proves facts materially different from those alleged in the indictment." *McIntosh*, 23 F.3d at 1458 (alteration added) (citations and internal quotation marks omitted). A variance is not reversible error if "the indictment fully and fairly apprised [the defendant] of the charges, that is, if the variance is harmless." *Id.* (alteration added) (citations and internal quotation marks omitted). Here, no variance occurred as the Government produced evidence materially *similar* to the facts alleged in the Indictment. (*See* Report 30–31) (citing evidence to support the allegations in the Indictment).

In addition, Belfast argues the Government failed to charge any additional individuals with the same conspiracy charge, leaving him in a "one man conspiracy, which is in conflict with law." (Objections 7). This argument was not raised in Belfast's Motion or Supplement and falls outside the one-year statute of limitations period for Section 2255 claims. *See* 28 U.S.C. § 2255(f). Notwithstanding this deficiency, Belfast's argument is plainly incorrect; the

Government need not charge other conspirators so long as the allegations are sufficient. *See United States v. Vonstein*, 105 F.3d 667, at *1 (9th Cir. 1996) ("Although a charge of conspiracy necessarily must allege the involvement of more than one person . . . it is perfectly permissible to indict and try a single member of a properly alleged conspiracy.").

The Court therefore agrees with the Report's conclusion that Belfast's second claim fails to state grounds upon which Section 2255 relief can be granted.

### C. Admission of Wesley Sieh's Testimony (Claim 3 of the Motion and Claim 3 of the Supplement)

Belfast's third claim for relief asserts trial counsel improperly failed to object to the admission of Wesley Sieh's ("Sieh['s]") testimony as hearsay. (*See, e.g.*, Mot. 7–8). Sieh served as one of Belfast's military recruits and testified regarding statements made by his former National Patriotic Front of Liberia commander (the "Former Commander"), the Anti-Terrorism Unit ("ATU") base commander (the "Base Commander"), and Belfast. (*See generally* October 8, 2008 Trial Tr. 116–236 [Cr. ECF No. 591]; October 10, 2008 Trial Tr. 13–142 [Cr. ECF No. 592]). The Report finds the Court properly admitted these statements pursuant to Federal Rules of Evidence 801(d)(2)(C) and (D)[5] and notes that the Eleventh Circuit has already rejected such

---

[5] Federal Rule of Evidence 801(d) provides, in relevant part:

>  (d) Statements That Are Not Hearsay.  A statement that meets the following conditions is not hearsay:
> . . . .
>
>  (2) An Opposing Party's Statement.  The statement is offered against an opposing party and:
> . . . .
>
> (C) was made by a person whom the party authorized to make a statement on the subject;
>
> (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
> . . . .

arguments. (*See* Report 34–35 (citing *Belfast*, 611 F.3d at 820–21)). In his Objections, Belfast argues the Eleventh Circuit erred in its determination with respect to Sieh's testimony regarding the Former Commander. (*See* Objections 13).

As an initial observation, the Court notes trial counsel did object to several portions of Sieh's testimony on the basis of hearsay. (*See* October 8, 2008 Trial Tr. 157:8–14, 158:6–8, 159:11–12, 160:9–10, 165:1–4, 168:5–7, 181:20–21, 216:22, 217:14–18). Thus, Belfast's argument is simply untrue. Moreover, the Eleventh Circuit already ruled on a portion of the disputed testimony, finding Sieh's testimony — regarding statements made by the Former Commander — was properly admitted pursuant to Federal Rule of Evidence 801(d)(2)(C) as an admission by a party-opponent. As the Eleventh Circuit found:

> [Belfast]'s cursory argument that the district court improperly admitted the testimony of Wesley Sieh, an ATU soldier, is without merit. . . . It was not improper for the district court to admit Sieh's testimony about [the Former Commander's] statements regarding [Belfast]'s instructions on the formation of the ATU. Under Fed. R. Evid. 801(d)(2)(C), this testimony was an admission by a party-opponent; it was a "statement by a person authorized by the party to make a statement concerning the subject," and thus was admissible hearsay. In particular, [the Former Commander's] statements to Sieh were admissible because they concerned the same matter for which [Belfast] was employing [the Former Commander], namely, to recommend men for the ATU. Put differently, [Belfast] hired [the Former Commander] to find him soldiers to form the ATU. [The Former Commander] then, in the process of finding ATU recruits, asked Sieh, an experienced Liberian soldier in Taylor's army, to join the ATU on [Belfast]'s behalf. The district court did not abuse its discretion in admitting this evidence.

*Belfast*, 611 F.3d at 820 (internal citation omitted).

The Court's ruling admitting this evidence has already been upheld on appeal. In a Section 2255 motion, a defendant is not entitled to reargue issues that have been adversely

---

Fed. R. Evid. 801(d) (emphasis omitted).

decided against him on direct appeal. *See United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal. Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." (citation, alteration, and internal quotation marks omitted)).

Belfast similarly challenges Sieh's testimony regarding statements made by the Base Commander, arguing the admitted "statements" of the Base Commander are hearsay and fall outside the alleged dates of the conspiracy. (Objections 15). The Report finds sufficient evidence existed to establish the Base Commander's employment or agency under Belfast, and the statements were admissible in accordance with Federal Rule of Evidence 801(d)(2)(D). (*See* Report 35). In his Objections, Belfast contends the Government failed to establish the existence of the employment relationship between the Base Commander and Belfast independent of the allegedly hearsay statements. (*See* Objections 13). Belfast also argues some of the admitted statements fall outside the allege dates of the conspiracy. (*See* Objections 15).

Contrary to Belfast's arguments, the Government laid a proper foundation for the admission of the testimony pursuant to Rule 801(d)(2)(D). Sieh testified regarding his personal observations of the hierarchy at the base and the Base Commander's interactions as Belfast's subordinate. (*See* October 8, 2008 Trial Tr. 209:25–211:10). These personal observations are admissible as they are not statements and therefore not subject to the hearsay rules, *see* Fed. R. Evid. 801(c); and the observations sufficiently establish the Base Commander acted at Belfast's direction. Consequently, the Base Commander's statements are admissible as "within the scope" of his agency relationship with Belfast pursuant to Rule 801(d)(2)(D).

Furthermore, while some of the testimony predates the conspiracy, it served to explain

how Sieh knew the declarant and was intrinsic evidence of the relationship between the two men. This sort of contextual testimony is admissible under Federal Rule of Evidence 404(b). *See United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) ("But evidence of criminal activity other than the charged offense is *not* extrinsic under Rule 404(b), and thus falls outside the scope of the Rule, when it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." (citation and internal quotation marks omitted) (emphasis in original)). The pre-conspiracy testimony permissibly explains the context of the crime and was necessary to complete the story of the crime. Thus, the Court properly admitted the testimony.

Finally, Belfast objects to the Report in that it failed to recognize the constructive amendment of the Indictment caused by Sieh's testimony. (Objections 17). As previously discussed, "A constructive amendment . . . occurs when the jury instructions so modify the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the grand jury's indictment." *United States v. Starke*, 62 F.3d 1374, 1380 (11th Cir. 1995) (citations and internal quotation marks omitted). Sieh's testimony had no effect on the jury instructions and Belfast's argument is more properly viewed as asserting the testimony resulted in a variance. However, even this variance argument fails as Sieh's testimony included facts in addition to, but not materially different from, those specified in the Indictment. *See Lander*, 668 F.3d at 1295 (citations and internal quotation marks omitted) ("A 'variance' occurs when the evidence at trial establishes facts materially different from those alleged in the indictment.").

Accordingly, the Court agrees with Judge White's conclusion that Belfast's claims of

ineffective assistance of counsel for failing to object to Sieh's testimony are refuted by the record and have no merit.

In sum, the undersigned has reviewed the Report, the record, and applicable law to assure herself that the findings and recommendations are proper. In the light of that review, the undersigned agrees with the analysis and recommendations stated in Judge White's Report, and is not persuaded by Petitioner's objections to the contrary.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Report of Magistrate Judge **[ECF No. 13]** is **AFFIRMED AND ADOPTED** as follows:

1. Roy M. Belfast, Jr.'s Motion **[ECF No. 1]** is **DENIED**.

2. A certificate of appealability is **DENIED**.

3. The Clerk of the Court is directed to **CLOSE** this case, and any pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14th day of February, 2013.

*[signature]*
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record; Movant, *pro se*